THE STATE *ex rel.* HUNT V. BELL.

Division One, December 23, 1893.

Dramshop License : EXCISE COMMISSIONER: FEES. The excise commissioner of the city of St. Louis appointed under the act of the legislature of March 17, 1893 (Acts p. 149) is required to issue separate drampshop licenses from the state and city and is entitled to a fee of $3 on each license.

*Mandamus.*

PEREMPTORY WRIT DENIED.

*Thos. J. Portis* and *Thos. G. Portis* for relator.

(1) The law and the city charter do now leave, and always have left it, to the option of the person granting such license to make them separate or otherwise, as they might prefer. They have made them separate simply because it suited their convenience better in keeping books and accounts, or something else. (2) The legislature, in framing said act, certainly did not have in mind two separate and distinct licenses, or it would have not used the singular number in every place where the word license is mentioned, except in the first section, where it speaks of licenses generally. (3) The law of 1893 is special and local and not a general law and cannot be held to repeal any of the provisions of the charter or ordinances of St. Louis. *State v. Hammer*, 42 N. J. L. 435; *State v. Hermann*, 75 Mo. 446; *Van Riper v. Parsons*, 40 N. J. L. 1; *Devine v. Cook*, 84 Ill. 590; *Wheeler v. Philadelphia*, 77 Pa. St. 338.

*Leverett Bell* for respondent.

The respondent will maintain that he is entitled to have a fee of $3 for each state and each city dramshop license issued by him in the city of St. Louis under the law of March 17, 1893, and that the demurrer should be overruled. Laws of 1891, p. 128; Revised Ordinances, pp. 951, 952, 954, 956; 2 Revised Statutes, pp. 2096, 2097; *State v. Austin,* 10 Mo. 591; *State v. Sherman,* 50 Mo. 265; *State v. Harper,* 58 Mo. 530; *Kansas City v. Flanders,* 71 Mo. 281; *State v. Hudson,* 13 Mo. App. 61; Laws of 1893, p. 149; secs. 20 to 25, article 9 of state constitution; *Ewing v. Hoblitzelle,* 85 Mo. 64.

BLACK, P. J.—Proceeding by *mandamus* instituted in this court. The respondent Bell is excise commissioner in the city of St. Louis, appointed under the act entitled "an act to create the office of excise commissioner in cities having a population of two hundred thousand or more, and to provide for the appointment and to define the duties of such commissioner." Acts of 1893, p. 149.

Hunt, the relator, presented to respondent Bell a petition for license to carry on a dramshop at a designated place in the city of St. Louis. His petition complied with the laws of the state, and the ordinances of St. Louis. Bell as excise commissioner gave him a statement showing the amounts to be paid to the collector, which amount Hunt paid, and than presented a duplicate receipt and demanded the proper license for six months from the fourth of July, 1893. Bell as excise commissioner demanded a fee of $3 for issuing a state license and the further sum of $3 for issuing a city license, while Hunt tendered $3, and refused to pay any further amount. The object of this proceed-

ing is to compel the commissioner to issue the proper license for the one fee.

If it was the duty of the commissioner to issue two licenses, one in behalf of the state and one in behalf of the city of St. Louis, then a peremptory writ should be denied, for the commissioner was entitled to a fee of $3 for each license, according to the eighth section of that act.

To an understanding of this question it is necessary to take a general survey of the general laws, and also of the ordinances of the city of St. Louis, relating to dramshops as they existed just before the passage of the law of 1893.

The general dramshop law of 1891 (Acts of 1891, p. 128) defines dramshop keepers, and gives to the county court the power to issue a dramshop license on the application of the dramshop keeper and provides that there shall be levied upon any such license a tax for state purposes and also a tax for county purposes. Most of the sections of that act relate to such licenses issued by county courts, and not to licenses issued by cities. The eighth section, however, applies to cities also, and according to it a dramshop license cannot be issued, either by a county court or a city, except upon a petition of a specified number of taxpayers in the specified locality.

The city of St. Louis has the charter power to license, tax and regulate dramshops; and the petition of the relator shows that the city had enacted ordinances for that purpose. These ordinances and section 8 of the act of 1891, point out how the city licenses may be obtained.

Enough has been said to show that prior to the act of the seventeenth of March, 1893, a dramshop keeper in St. Louis was bound to have two licenses one from the state and one from the city. The revenue

arising from one goes to the state treasury, and the revenue from the other to the city treasury. As the city of St. Louis occupies the dual relation to the state of a county and a city under its scheme and charter, it must collect the state tax. Indeed it is conceded by the relator's petition that he was bound to procure two licenses prior to the act of March 17, 1893.

We then come to the inquiry whether the excise commissioner appointed by the governor under the act of 1893 represents both the state and the city, and if he does, whether he should issue two licenses, one for the state and the other for the city,

The act of 1893 provides: "Section 1. In all cities in this state which now have or may hereafter have a population of two hundred thousand inhabitants, or more, there is hereby created the office of excise commissioner, who shall have exclusive authority to grant dramshop licenses; and the commissioner shall be appointed by, and hold his office during the pleasure of, the governor.

"Sec. 2. Any person desiring a dramshop license shall present a petition to the excise commissioner, as required by the laws of this state, and if the petition is signed by the requisite number of petitioners, and the applicant is a person of good moral character, the commissioner shall give to the applicant a statement in writing that, upon the payment of the license tax required by law, a dramshop license will be issued to such applicant."

It is then made the duty of the applicant to pay the tax to the city collector, and present a duplicate receipt to the excise commissioner, "who shall then issue dramshop license to the applicant." And it is then further provided:

"Sec. 8. The person to whom dramshop license shall be issued shall pay to the excise commissioner a

fee of $3 for each license for granting the same, out of which the commissioner shall pay for all clerical force necessary to properly conduct the business of his office.

"Sec. 9.   All acts and parts of acts inconsistent with this act are hereby repealed."

This act of 1893, it will be seen, applies to all cities having a population of two hundred thousand or over, and in all such cities the excise commissioner has the exclusive authority to grant dramshop licenses. To obtain a license, a petition must be presented to him "as required by the laws of this state." This reference is to the eighth section of the Act of 1891, which, as we have seen, applies in all cases, whether the license is to be issued by the state or a city. We think the purpose and object of the law was to take the power of granting dramshop licenses out of the hands of elective officers, and place it in the hands of a person appointed by the governor. As the appointee is given the *exclusive* power to grant such licenses in such cities, it seems clear that he represents the state and the city also. He is the only officer in such cities who can issue a license whether it be on behalf of the state or the city.

The next question is whether the excise commissioner should issue two licenses, one for the state and the other for the city. We have before shown that prior to this law two licenses were necessary, and we see nothing in this act of 1893 which makes any change in this respect. The general law provides that no person shall sell intoxicating liquors in any quantity less than three gallons, either at retail or in the original package, without taking out a license as a dramshop keeper; and by the ordinances of the city of St. Louis a dramshop keeper is a person permitted by law or ordinance to sell intoxicating liquors in any quantity less than a gallon. The state license, it will be seen,

differs from the city license. The state license may begin at one time and the city at another.

The act of 1893 makes it the duty of the excise commissioner to issue, and gives to him power to revoke, dramshop licenses. In other respects the state law and the existing valid ordinances of the city remain in full force. In view of these facts, and of the fact that prior to the act of 1893 a dramshop keeper was bound to have two licenses at the same time, and keeping in view the further fact, that prior to this act both licenses were issued in St. Louis by the collector, we think there can be no doubt but the excise commissioner must issue two licenses, one on behalf of the state and the other on behalf of the city. With this conclusion it follows that under section 8 of the act of 1893, the commissioner is entitled to a fee of $3 dollars for each license.

That the legislature has the power to repeal or modify ordinances of the city of St. Louis, is no longer an open question. It is true the repealing clause of the act of 1893 does not in terms mention city ordinances; and we are cited to one act passed at the same session where the repealing clause makes special mention of ordinances (Acts of 1893 p. 53), from which it is sought to draw the conclusion that the general assembly did not intend to repeal any ordinance by the act now in question. The repealing clause of the act of 1891 does not make special mention of ordinances of any city, yet there can be no doubt but the eighth section of that act would and did have the effect to repeal any city ordinance in conflict with it. We think it was the purpose of the act of 1893 to provide for a commissioner who should have the sole power to issue city dramshop licenses as well as licenses on behalf of the state; and, this intention appearing, the ordinances of St. Louis must give way to the act

as far as they are in conflict with it.

It is suggested by the relator that the act of 1893 is unconstitutional because it is a local or special law. The question is ruled against the relator on the authority of *State ex rel v. Miller*, 100 Mo. 447, and cases there cited.

Peremptory writ denied. BARCLAY, J., absent. The other judges concur.